UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TONI LEE HEBDA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>WALDRON PRIVATE WEALTH, LLC,<br><br>　　　　Defendant. | ELECTRONICALLY FILED<br><br>Civil Action No.　22-1472<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Toni Lee Hebda ("Hebda" or "Plaintiff") brings this action against Defendant Waldron's Private Wealth, LLC ("Waldron" or "Defendant"). Plaintiff makes the following allegations based upon personal knowledge, as well as information and belief, and pursuant to the investigation of counsel Michael C. Alberty, Esquire and Stephen S. Photopoulos, Esquire:

**NATURE AND SUMMARY OF THE ACTION**

1.　This action arises from Defendant's failure to make its digital properties accessible to blind individuals and/or individuals who have visual impairments that substantially limit their eyesight, which violates the effective communication and equal access requirements of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-12189. These provisions were enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities"[1] by "assur[ing] equality of opportunity, full participation, independent living, and economic self-sufficiency."[2]

2.　Although styled as an individual action, the injunctive relief that Hebda seeks will

---

[1] 42 U.S.C. § 12101(b)(1).
[2] 42 U.S.C. § 12101(a)(7).

1

benefit an estimated 7,567,000 people, because 2.3 percent of the United States population report having a visual disability,[3] as of the year 2020 the United States population was reported to be 329,000,000 and to Defendant, who will extend its market reach to this population.[4]

3. For this significant portion of Americans, accessing websites, mobile applications, and other information via their smartphones, personal computers, and other electronic devices has become a necessity, not a convenience. Americans today are increasingly connected to the world of digital information. The inability to access the world of digital information due to violations of the ADA can be devastating to a blind or visually impaired individual, like the Plaintiff in this case.

4. Plaintiff has attempted to patronize Defendant's Websites in the past and will attempt again in the future in order to utilize all of the services Defendant offers and to ensure the Website's compliance with the ADA. However, unless Defendant is required to eliminate the access barriers at issue and required to change its policies so that access barriers do not reoccur on Defendant's Website, Plaintiff will continue to be denied full access to the Website as described, and will be deterred from fully using Defendant's Website.

5. Places of public accommodation, such as a restaurant, bar, professional offices, or other service establishments are crucial for compliance according to 42 U.S.C. §12181.

6. The ADA expressly contemplates the type of injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires:

> In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . Where

---

[3] Erickson, W., Lee, C., von Schrader, S., *Disability Statistics from the American Community Survey (ACS),* Cornell University Yang-Tan Institute (YTI), www.disabilitystatistics.org (last accessed June 28, 2022).

[4] Sharron Rush, *The Business Case for Digital Accessibility,* W3C Web Accessibility Initiative (Nov. 9, 2018), https://www.w3.org/WAI/business-case/ (last accessed June 28, 2022) ("The global market of people with disabilities is over 1 billion people with a spending power of more than $6 trillion. Accessibility often improves the online experience for all users.").

>   appropriate, injunctive relief shall also include requiring the . . .
>   modification of a policy . . .

42 U.S.C. § 12188(a)(2).

7. Because Defendant's Website has never been accessible and because Defendant does not have, and has never had, a company policy that is reasonably calculated to cause its Website to become and remain accessible, Plaintiff invokes 42 U.S.C. §12188(a)(2) and seek a permanent injunction requiring:

>   (a) That Defendant retain a qualified consultant acceptable to Plaintiff ("Mutually Agreed Upon Consultant") and who shall assist it in improving the accessibility of its Website so it complies with version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1 AA");
>
>   (b) That Defendant work with the Mutually Agreed Upon Consultant to ensure that all employees involved in website development and content development be given web accessibility training on a periodic basis calculated to achieve ongoing compliance with WCAG 2.1 AA;
>
>   (c) That Defendant work with the Mutually Agreed Upon Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether Defendant's Websites continue to comply with WCAG 2.1 AA on an ongoing basis;
>
>   (d) That Defendant work with the Mutually Agreed Upon Consultant to perform end-user accessibility/usability testing on a periodic basis with said testing to be performed by individuals with various disabilities to evaluate whether Defendant's Websites continue to comply with WCAG 2.1 AA on an ongoing basis; and,
>
>   (e) That Defendant work with the Mutually Agreed Upon Consultant to create an accessibility policy that will be posted on its Websites, along with an email address and toll-free phone number to report accessibility-related problems.[5]

---

[5] Web-based technologies have features and content that are modified on a daily, and in some instances an hourly, basis, and a one time "fix" to an inaccessible website will not cause the website to remain accessible without a corresponding change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to web-based technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

**JURISDICTION AND VENUE**

8. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

9. Plaintiff's claims asserted herein arose in this judicial district.

10. Defendant purposefully targets and otherwise solicits business from Pennsylvania residents through its Website and physical locations. Because of this targeting, it is not unusual for Defendant to conduct business with Pennsylvania residents. In fact, the opposite is true: Defendant derives substantial revenue from transactions in Pennsylvania, having more than a slight effect on the state's commerce as a result.

11. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

**PARTIES**

12. Plaintiff, Hebda is and, at all times relevant hereto, has been a resident of Washington County, Pennsylvania. Plaintiff, Hebda is and, at all times relevant hereto, has been visually impaired and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*

13. Defendant, Waldron Private Wealth, LLC has its business location at 1150 Old Pond Road, Bridgeville, Pennsylvania 15017. Waldron's principal business is wealth management and consulting. Defendant's brick and mortar location and Website are integrated and are public accommodations pursuant to 42 U.S.C. § 12181(7).

**FACTUAL BACKGROUND**

14. The internet has become a significant source of information and a means for conducting everyday activities such as shopping, banking, education, entertainment for both

sighted and blind and visually impaired versions, as well as individuals with other perceptual or motor disabilities.

15. Individuals with vision related disabilities may access websites by using keyboards in conjunction with screen reader software that converts text to audio. Screen reader software provides the primary method by which a blind person may independently use the internet. Unless websites are designed to be read by screen reader software, blind individuals are unable to fully access websites and the information, products, and services available through the sites.

16. Through its Website, Defendant offers wealth management services at its Bridgeville location. The Website shows potentially the type of services which are available at the brick-and-mortar location and the types of beverages served. The Website also indicates the types of services available at Defendant's brick-and-mortar location.

17. Plaintiff Hebda is permanently visually impaired and uses screen reader software in order to access the internet and read website content.

18. Plaintiff has visited the Website and has been denied the full use and enjoyment of the services available on the Website as a result of access barriers.

19. The Website's barriers have previously denied Plaintiff full and equal access to all of the services Defendant's Website offers, and now deter Plaintiff from attempting to use Defendant's Website in the future.

20. Despite Plaintiff's permanent disabilities, the Plaintiff is ready, able, and intends to visit Defendant's Website once it is made compliant.

21. As a result of having visited Defendant's Website in the past, and of investigations performed on Plaintiff's behalf, Plaintiff is aware that Defendant's Website violates (multiple

times in most instances) at least the following W3C accessibility standards:

(a) *1.3.1 Info and Relationships – Level A WCAG 2.0* – This is to ensure that being able to see the page, including its visual layout and color use, is not required in order to be able to understand the information presented;

(b) *4.1.2  Name, Role, Value - Level A   WCAG 2.0 -* The name and state of all form elements, links and other UI components can be determined and the state can be changed. This ensures compatibility with assistive technology such as screen readers, screen magnifiers, and speech recognition software;

(c) *1.1.1  Non-text Content - Level A   WCAG 2.*0 - All images and other non-textual items should have a text alternative that describes what it is, so that blind users are able to understand these items;

(d) *2.4.1  Bypass Blocks - Level A   WCAG 2.0* - This allows blind users, who use screen reader software, to skip the page header, navigation menus and other content that is repeated on every page, and go straight to the main content on the page;

(e) *1.4.3  Contrast (Minimum) - Level AA   WCAG 2.0* -  Elements should have an inherited foreground color to complement the corresponding inline background color or image;

(f) *3.2.1  On Focus - Level A   WCAG 2.0* - No unexpected actions should occur when a particular UI element receives keyboard focus. This can be very confusing to blind users and other keyboard-only users;

(g) *3.2.4  Consistent Identification - Level AA   WCAG* - If there are two components on a web page that both have the same functionality as a component on another page in a set of web pages, then all 3 must be consistent;

(h) *3.2.3  Consistent Navigation - Level AA   WCAG 2.0* - Check that navigational mechanisms that are repeated on multiple Web pages occur in the same relative order each time they are repeated, unless a change is initiated by the user;

(i) *3.1.2  Language of Parts - Level AA   WCAG 2.0* - Ensure that any change in language is marked using the lang and/or xml:lang attribute on an element, as appropriate;

(j) *2.4.7  Focus Visible - Level AA   WCAG 2.0* - Check that there is at least one mode of operation where the keyboard focus indicator can be visually located on user interface controls;

(k) *2.4.6  Headings and Labels - Level AA   WCAG 2.0* - Check that headings and labels describe topic or purpose;

(l) *2.4.5  Multiple Ways - Level AA   WCAG 2.0* - More than one way is available to locate a Web page within a set of Web pages except where the Web Page is the result of, or a step in, a process.

22. If the Website was accessible, i.e., if Defendant removed these barriers, Plaintiff could independently make decisions about wealth management services via Defendant's Website.

23. The law requires that Defendant reasonably accommodate Plaintiff's disabilities by removing these existing access barriers. Removal of the barriers identified above is readily achievable and may be carried out without much difficulty or expense.

24. Removal of these barriers would make Defendant's Websites accessible to Plaintiff and to 7.5 million blind or visually impaired Americans, allowing them to independently research wealth management services via Defendant's Website; and access the various services and information available on it.

25. The Plaintiff's above request for injunctive relief is consistent with the work performed by the United States Department of Justice, Department of Transportation, U.S. Architectural and Transportation Barriers Compliance Board (the "Access Board"), and numerous federal courts all of whom have relied upon or mandated that the public-facing pages of websites comply with an international compliance standard known as Web Content Accessibility Guidelines version 2.1 AA ("WCAG 2.1 AA"), which is published by an independent third party known as the Worldwide Web Consortium ("W3C"). Available at https://www.w3.org/ (last visited September 20, 2022).

26. The Department of Justice originally utilized the WCAG 2.0 Standards as a benchmark for satisfying the requirements of 42 U.S.C. §§ 12182(a) and 12182(b)(2)(A)(iii). See, e.g., Nondiscrimination on the basis of Disability, Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations, 75 Fed. Reg. 43460, 43465 (July 26, 2010) (stating that WCAG 2.0 Guidelines provide "recognized voluntary international guidelines for Web accessibility").

27. On June 15, 2018, W3C released the latest version of Web Content Accessibility Guidelines (WCAG 2.1). These new guidelines were released with the goal of improving accessibility guidance for three major groups: users with cognitive or learning disabilities, users with low vision, and users with disabilities on mobile devices. WCAG 2.1 builds on and is backwards compatible with WCAG 2.0, which means that web pages that conform to WCAG 2.1 also conform to WCAG 2.0.

28. Without the injunctive relief sought herein, Plaintiff and other individuals with vision related disabilities will continue to be unable to independently use the Website in violation of their rights under the ADA.

## SUBSTANTIVE VIOLATION
### (Title III of the ADA, 42 U.S.C. § 12181 *et seq.*)

29. The allegations contained in the previous paragraphs are incorporated by reference.

30. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

31. Defendant's Websites are a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).

32. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

33. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations, which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

34. Under Section 302(b)(2) of the Title III of the ADA, unlawful discrimination also includes, among other things: "a failure to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the goods, services, facility, privilege, advantage or accommodation being offered or would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii); see also 28 C.F.R. § 36.303(a).

35. Title III requires that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). The regulation sets forth numerous examples of "auxiliary aids and services," including ". . . accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision." 28 C.F.R. § 36.303(b).

36. The acts alleged herein constitute violations of Title III of the ADA, and the

regulations promulgated thereunder.  Plaintiff, who is blind and has a disability that substantially limits the major life activity of seeing within the meaning of 42 U.S.C. §§ 12102(1)(A) and (2)(A), has been denied full and equal access to the Websites.  Plaintiff has not been provided services that are provided to other patrons who are not disabled, and/or has been provided services that are inferior to the services provided to non-disabled persons.  Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct.  These violations are ongoing.

37. Plaintiff's claims are warranted by existing law or by non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law.

38. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiff's request relief as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for:

a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant took no action that was reasonably calculated to ensure that its Website is fully accessible to, and independently usable by, blind individuals;

b. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504 (a) which directs Defendant to take all steps necessary to bring its Websites into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its Websites are fully accessible to, and independently usable by, blind individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law--the specific injunctive relief requested by Plaintiff is described more fully in Paragraph 6 above;

c. Payment of costs of suit;

d. Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and

e.  The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated:  October 14, 2022					Respectfully Submitted,


							*/s/ Michael C. Alberty*
							_____
							Michael C. Alberty (PA Bar No. 54977)
							mike@sphotolaw.com


							*/s/ Stephen S. Photopoulos*
							_____
							Stephen S. Photopoulos (PA Bar No. 89590)
							steve@sphotolaw.com

							LAW OFFICE OF STEPHEN S. PHOTOPOULOS
							3000 McKnight East Drive, Suite 330
							Pittsburgh, PA 15237
							Phone: (412) 414-9889

							Counsel for Plaintiff,
							Toni L. Hebda